## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MICHAEL SOTO,**

**Plaintiff,**

**Case No. 2:18-cv-6641**

**v.**
**Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

**Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael Soto for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*.

Plaintiff appeals from the final decision of the Commissioner of Social Security denying

Plaintiff's application. After careful consideration of the entire record, including the entire

administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules

of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the

Commissioner's decision.

## I.     PROCEDURAL HISTORY

On October 15, 2014, Plaintiff filed an application for benefits, alleging that he has been

disabled since May 6, 2014. R. 17.[1] Plaintiff's application was denied initially and upon

reconsideration. R. 128−32, 134−39. Plaintiff sought a *de novo* hearing before an administrative

law judge. R. 140−41. Administrative Law Judge J. Samuel Childs ("ALJ") held a hearing on

---

[1] This summary is taken from the first page of the ALJ's decision, because the actual application
for benefits is not included in the administrative record.

1

March 25, 2016, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 31–87. In a decision dated September 13, 2016, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 6, 2014, his alleged disability onset date, through the date of the decision. R. 17–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 14, 2018. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 28, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[2] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 28. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

3

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

4

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

6

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 40 years old on his alleged disability onset date, R. 24, and he met the insured status requirements of the Social Security Act through December 31, 2020, R. 19.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 6, 2014, his alleged disability onset date, and September 13, 2016, the date of the ALJ's decision. R. 19.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: heart disease, history of aortic valve and aneurysm repair, sleep apnea, depression, anxiety, bilateral knee gout, degenerative disc disease of the lumbar and cervical spine, and substance abuse disorder ("DA&A [drug abuse and alcoholism] not a material factor"). *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19−20.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 20−24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a construction worker and tow truck driver. R. 24.

At step five, the ALJ found that a significant number of jobs−*i.e*., approximately 650,000 jobs as a marker; approximately 750,000 jobs as a silver wrapper; approximately 550,000 jobs as a garment sorter−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 25. The ALJ therefore concluded

7

that Plaintiff was not disabled within the meaning of the Social Security Act from May 6, 2014, his alleged disability onset date, through the date of the ALJ's decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 26. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 27.

## IV.    DISCUSSION

### A.    Step Three

Plaintiff first argues that the ALJ erred at step three of the sequential evaluation when he failed to consider "any *pulmonary listing* in conjunction or combination with plaintiff's cardiovascular disorders in order to combine severe sleep apnea with plaintiff's severe heart disease;" Plaintiff also contends that the ALJ failed to properly consider Plaintiff's psychiatric impairments. *Plaintiff's Moving Brief*, ECF No. 26, pp. 18–25 (emphasis in the original). This Court disagrees.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of any of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits

8

under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, an ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the administrative decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

Here, the ALJ determined at step two that Plaintiff's severe impairments consisted of heart disease, history of aortic valve and aneurysm repair, sleep apnea, depression, anxiety, bilateral knee gout, degenerative disc disease of the lumbar and cervical spine, and substance abuse disorder ("DA&A not a material factor"). R. 19. At step three, the ALJ found that "[t]here is no clinical evidence of any severe impairment(s) considered singularly or in combination that would meet or equal any Listing of Impairment(s), with Listing(s) 4.02 [chronic heart failure while on a regimen of prescribed treatment], 4.04 [ischemic heart disease], 4.10 [aneurysm of aorta or major branches due to any cause], 1.02 [major dysfunction of a joint(s) (due to any cause)], 1.04 [disorders of the spine], 12.04 [affective disorders], 12.06 [anxiety-related disorders] and 12.09 [substance addiction disorders], specifically considered." R. 19. Thus, the

9

ALJ explicitly stated that he considered Plaintiff's impairments in combination. *See id.* "An ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec. Admin.*, No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec. Admin.*, 268 F. App'x 186, 189 (3d Cir. 2008)).

Plaintiff complains that the ALJ failed to consider any pulmonary-related listing at this step in combination with Plaintiff's cardiovascular disorders and he argues that "Listing paragraph 3.00P1 & 2 requires such evaluation[.]" *Plaintiff's Moving Brief*, ECF No. 26, p. 22. Plaintiff bears the burden of proof at step three, *see Smith*, 631 F.3d at 634, and must bear the burden of "present[ing] medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531. Here, Plaintiff refers to the results of a July 2015 sleep study, which he asserts revealed "disordered breathing, moderate hypoxemia and moderate disruption (in breathing)." *Plaintiff's Moving Brief*, ECF No. 26, p. 22. However, Plaintiff provides no citation to the record in support this factual assertion. *See id.*; *see also Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)). Nor does Plaintiff identify the criteria for any pulmonary listing or otherwise explain how any such evidence establishes that he meets or medically equals such a listing. *See generally Plaintiff's Moving Brief*, ECF No. 26, pp. 22–24; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here.

10

Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it

to the Court to put them together. The Court does not assemble arguments for a party from

fragments."). For all these reasons, Plaintiff has not met his burden at step three. *See Smith*, 631

F.3d at 634; *Sullivan*, 493 U.S. at 531.

Moreover, the ALJ's failure to expressly refer to a specific listing is not fatal "as long as

the ALJ's review of the record permits meaningful review of the step-three conclusions." *See*

*Lopez v. Comm'r of Soc. Sec*., 270 F. App'x 119, 121 (3d Cir. 2008) (citations omitted); *see also*

*Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262−63 (3d Cir. 2006) (rejecting argument

that the ALJ was required to identify which listings he used in his decision, stating that "the ALJ

is not required to use any specific format or language in his analysis, as long as he sufficiently

develops the record to permit meaningful judicial review[,]" and finding that "the ALJ did state

what listings he used for comparison" by citing to Listing 1.00, which "is not merely an

introductory treatise"); *Jones*, 364 F.3d at 503−05 (finding that, even though the ALJ did not

expressly refer to any specific Listing, the ALJ's analysis satisfied step three because the

decision indicated that the ALJ considered the appropriate factors). Here, although the ALJ did

not explicitly refer to a pulmonary listing at step three, "the ALJ's decision, read as a whole,

illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the

claimant] did not meet the requirements for any listing, including" a pulmonary listing.  *See*

*Jones*, 364 F.3d at 505; *see also Lopez*, 270 F. App'x at 122 (finding that the "ALJ's failure to

discuss specific Listings is not reversible error . . . because the ALJ analyzed all the probative

evidence and explained his Decision sufficiently to permit meaningful review"); *Rivera*, 164 F.

App'x at 262−63; *Trzeciak v. Colvin*, No. CV 15-6333, 2016 WL 4769731, at *5 (D.N.J. Sept.

12, 2016) ("[A]n ALJ is not required to repetitively analyze each symptom at each step; the

requirement is that the decision be subject to "meaningful review" by a reviewing court.") (citing *Wilkinson v. Colvin*, 2014 WL 1316056, at *8 (D.N.J. Apr. 1, 2014)). At step four, the ALJ assigned "significant weight" to the opinions of the state agency reviewing medical consultants, R. 23, who found, *inter alia*, after noting that Plaintiff had been diagnosed with sleep apnea and after considering the results of a July 2015 sleep study, that Plaintiff neither met nor equaled a listed impairment. R. 118. The ALJ went on to expressly consider Plaintiff's sleep apnea, stating that "there is evidence of moderate sleep apnea, according to sleep test, but also evidence of non-compliance with CPAP and continued smoking against medical advice." R. 23. Read as a whole, this record permits meaningful judicial review and provides substantial support for the ALJ's finding that Plaintiff's sleep apnea, whether considered singly or in combination with his other impairments, did not meet or medically equal a listed impairment. *See Sullivan*, 493 U.S. at 531; *Jones,* 364 F.3d at 504−05.

Plaintiff goes on to complain that the ALJ did not meaningfully consider his psychiatric impairments at step three, but instead "just announce[d] conclusions without supporting evidence and promise[d] further discussion later on" that "d[id] not materialize." *Plaintiff's Moving Brief*, ECF No. 26, p. 24. This Court disagrees. At step three, the ALJ concluded that Plaintiff's mental impairments, considered both singly and in combination, did not meet or medically equal a listed impairment, reasoning as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation,

each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has moderate restriction. In social functioning, the claimant has mild difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, which have been of extended duration. <u>These findings as to the claimant's mental functional limitations will be further discussed in the remainder of this decision.</u>

The State Agency with review of the evidence through August 2015, assessed the claimant with mental functional limitations rated as moderate in maintaining activities of daily living, and concentration, persistence or pace, and mild in maintaining social functioning. The claimant was noted with one to two episodes of decompensation, but in the face of cocaine and steroid use, and not for any extended period. My review of the evidence below is consistent with the state agency B criteria findings.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 19–20 (emphasis in the original). Although Plaintiff contends that further discussion of his mental impairments "does not materialize" later in the discussion as promised, the ALJ, in fact, expressly considered Plaintiff's psychiatric impairments at step four and explained his findings with citation to the record:

As for the opinion evidence, the State Agency with review of the evidence through August 2015, assessed the claimant with the residual functional capacity for a restricted range of light work, and mental functional limitations were rated as

13

moderate in maintaining activities of daily living, and concentration, persistence or pace, and mild in maintaining social functioning. The claimant was noted with one to two episodes of decompensation, but in the face of cocaine and steroid use, and not for any extended period. There is no evidence of any treating source opinions regarding disability status or functional limitations, as might be anticipated given the severity of the claimant's allegations and hearing testimony. In addition, the claimant has reported that his cardiac doctors have told him that he can no longer work, but the undersigned found no evidence in the record of such statement(s).

R. 23.

The claimant has also reported significant depression and anxiety, but most seems related to his current living condition and worries over his physical health issues. The evidence indicates that the claimant does have a girlfriend, and does visit with other family member, and engages in some household chores and shopping activities, which is consistent with the State Agency's findings of mental residual functional capacity (Exh. 5E). The record further describes significant non-compliance with psychogenic medications, but improvement in his mental health conditions when medications are restarted (Exhs. 10F and 17). Thus, the undersigned accepts the opinions of the State Agency regarding the claimants' [sic] mental functional limitations under the "B" criteria, as there is evidence that the claimant has mental health issues related to his original heart issues, and some cocaine abuse, but there are no mental functional limitations that would be disabling.

In summary, while the claimant may certainly have some physical and mental limitations related to his severe impairments, to prevent the claimant from engaging in past relevant work, or more arduous work efforts than my finding of residual functional capacity, there is no evidence of total disability.

R. 23–24.

The ALJ's thorough review of the evidence relevant to Listings 12.04, 12.06, and 12.09 permits meaningful review by this Court. *See Jones*, 364 F.3d at 505; *cf. Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."). Notably, Plaintiff does not discuss, or even identify, the criteria for these listings, nor does he cite to any evidence in the record that satisfies such criteria. *See Plaintiff's Moving*

*Brief*, ECF No. 26, pp. 24−25. Plaintiff therefore has not shown that the ALJ erred when finding

that Plaintiff's impairments neither met nor medically equaled a listed impairment. *See Jones*,

364 F.3d at 505; *see also Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162−63 (3d Cir.

2008) (finding that substantial evidence supported the ALJ's finding that the claimant's

impairments did not meet a listed impairment where the claimant "provides us with no citations

to any record evidence demonstrating that her impairments are of Listing-level severity").

        For all these reasons, this Court concludes that substantial evidence supports the ALJ's

findings at step three of the sequential evaluation.

**B.      RFC**

        Plaintiff also contends that the ALJ's RFC determination is not supported by substantial

evidence. *Plaintiff's Moving Brief*, ECF No. 26, pp. 25−31. Plaintiff's arguments are not well

taken.

        A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §

404.1545(a)(1). At the administrative hearing stage, an ALJ is charged with determining the

claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc.

Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State

agency consultants—must make the ultimate disability and RFC determinations.") (citations

omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence.

*Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established"

limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir.

2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is

supported by medical evidence, but is opposed by other evidence in the record" but "[t]his

discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported

reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except only occasionally climbing ramps and stairs, never climbing, ladders, ropes or scaffolds, occasionally balancing, stooping, kneeling, crouching and crawling, occasionally reaching overhead, bilaterally, and no direct exposure to hazards, such as unprotected heights, dangerous machinery or uneven surfaces. The claimant is further limited to unskilled work defined as simple routine tasks involving no more than simple short instructions and simple work related decisions with few workplace changes, but no work at a fixed production pace, and only frequent interactions with the general public, coworkers or supervisors.

R. 20−21.

Plaintiff first complains that the ALJ, in making this determination, failed to properly consider his sleep apnea. *Plaintiff's Moving Brief*, ECF No. 26, pp. 28−31. As previously discussed, at step four, the ALJ assigned "significant weight" to the opinions of the state agency reviewing medical consultants, R. 23, who found, *inter alia*, after noting that Plaintiff had been diagnosed with sleep apnea and after considering the results of a July 2015 sleep study, that Plaintiff did not meet or equal a listed impairment. R. 118. The ALJ went on to expressly consider Plaintiff's sleep apnea, stating that "there is evidence of moderate sleep apnea, according to sleep test, but also evidence of non-compliance with CPAP and continued smoking against medical advice." R. 23. Plaintiff contends, however, that the July 2015 sleep study "indicated that plaintiff's particular type of sleep apnea was not amenable/correctable by CPAP therapy[.]" *Plaintiff's Moving Brief*, ECF No. 26, p. 29. Even setting aside the fact that Plaintiff has failed to cite to any evidence in the record that supports this assertion, *see id.*, Plaintiff's argument is nevertheless unavailing. Notably, Plaintiff has misinterpreted the medical evidence

16

that relates to a sleep study that Plaintiff underwent on July 8, 2015. *Id.*; *see also* R. 638−40;

688−90. The sleep study upon which Plaintiff relies, found as follows:

> Impression: This study demonstrates the presence of moderate sleep-disordered breathing in the form of positional central and mixed apneas and hypopneas addition to mid snoring. These respiratory irregularities induce moderate hypoxemia and moderate disruption of sleep.
>
> This study is negative for periodic limb movements in sleep (nocturnal myoclonus).
>
> <u>A trial of CPAP was not instituted due to delayed onset of sleep and events.</u>

R. 690 (emphasis added). Although Plaintiff cites this evidence to support his assertion that his

"particular type of sleep apnea was not amenable/correctable by CPAP therapy[,]" the study

explicitly explained only that a "trial of CPAP was not instituted due to delayed onset of sleep

and events." R. 690. This language simply does not support Plaintiff's assertion that CPAP

therapy would not manage his sleep apnea. *Id.*; *see also* R. 639 ("There was a prolonged sleep

latency period of 104.0 minutes until the onset of the initial sustained sleep epoch."), 686

(advising that Plaintiff will need another sleep study for BIPAP/CPAP titration).

Plaintiff also disputes the ALJ's finding that he was non-compliant with CPAP therapy,

arguing that the evidence revealed that he was only occasionally unable to use the CPAP

machine—and then because of a head injury—and that he was otherwise mostly compliant.

*Plaintiff's Moving Brief*, ECF No. 26, p. 28 (citing R. 469). However, in the notes from the same

October 2013 office visit upon which Plaintiff relies, he "was encouraged to be more compliant

with his CPAP and use his CPAP even with daytime naps." R. 472. Moreover, notes from

multiple office visits in 2014 and 2015 reflect that Plaintiff continued to be non-compliant with

CPAP therapy. R. 394, 456, 459, 606, 616, 641, 649, 691. This evidence provides substantial

support to the ALJ's finding that Plaintiff did not comply with CPAP therapy and undermines

Plaintiff's unsupported speculation that his sleep apnea was "not amenable/correctable by CPAP therapy[.]"

Plaintiff next attacks the ALJ's consideration of his continued smoking against medical advice, insisting that the impression from the July 2015 sleep study "leads to the logical conclusion that . . . smoking has nothing to do with sleep apnea, and if it does the decision doesn't tell us how." *Plaintiff's Moving Brief*, ECF No. 26, pp. 28−29 (contending that, *inter alia*, Plaintiff has made numerous attempts to quit smoking). However, Plaintiff's assertion amounts to nothing more than speculation that smoking is irrelevant to his sleep apnea. *See id.* Notably, Jag Sunderram, M.D., a specialist in sleep medicine who treated Plaintiff on multiple occasions and who conducted the July 2015 sleep study, repeatedly advised Plaintiff to stop smoking. *See* R. 472 (reflecting Dr. Sunderram's advice in October 2013, that Plaintiff should quit smoking), 506 (reflecting Dr. Sunderram's advice in January 2013, that Plaintiff "[n]eeds to quit smoking"), 610 (reflecting Dr. Sunderram's counseling in June 2015, that Plaintiff should quit smoking), 636 and 686 (reflecting that Dr. Sunderram "[r]eiterated importance of smoking cessation" in July 2015), 645 and 695 (reflecting that, in June 2015, Dr. Sunderram again counseled Plaintiff on the need to quit smoking).

Plaintiff also contends that "by January, 2015" he "was diagnosed with: 'Excessive daytime sleepiness and history of snoring and waking up choking and gasping.'" *Plaintiff's Moving Brief*, ECF No. 26, pp. 28−29 (quoting R. 506). This was indeed Dr. Sunderram's assessment in July 2013. *See* R. 503 (reflecting first page of five pages from July 31, 2013, office visit), 506. However, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004)

18

("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Notably, Plaintiff does not identify specific functional limitations found by any medical source flowing from this assessment and which the ALJ failed to include in the RFC. *See generally Plaintiff's Moving Brief*, ECF No. 26; *cf. Jones v. Astrue*, No. CIV. 10-1544, 2011 WL 2532891, at *12 (D.N.J. June 24, 2011) (finding that the plaintiff did not satisfy her burden of proving that a condition limited her ability to perform basic work where two records "provide no explanation for the diagnosis or any description of the degree to which Plaintiff's purported depression impairs her ability to perform basic work. Thus, at best, those documents prove only that Plaintiff has depression but not that it limits her ability to perform basic work. The ALJ cannot speculate about the impact of a purported condition on a claimant's functionality"). As previously discussed, an ALJ need include in the RFC only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554; *cf. Grella v. Colvin*, No. 3:12-CV-02115, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted).

Plaintiff goes on to contend that the ALJ failed to explain how "moderate restrictions" in his psychiatric condition "translate into an unfettered ability to maintain concentration, persistence and pace 8-hours every day and 40-hours every week[,]" complaining that the state agency reviewing physicians' opinions were the only basis for this finding. *Plaintiff's Moving Brief*, ECF No. 26, p. 35. Plaintiff's arguments are not well taken. The state agency reviewing

physicians opined, *inter alia*, that Plaintiff could understand, remember, and execute simple instructions, sustain concentration, persistence or pace, respond to supervision, and adapt to most changes in simple, low-stress work settings. R. 23, 102, 120. The ALJ accorded "significant weight" to those opinions, which provide substantial support for the ALJ's RFC determination that Plaintiff had the RFC to perform light work that was "limited to unskilled work defined as simple routine tasks involving no more than simple short instructions and simple work related decisions with few workplace changes, but no work at a fixed production pace[,"] R. 20 −21. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) ("A limitation to 'simple tasks' is fundamentally the same as one 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'") (citations omitted); *see also id*. at 213−14 (finding under the Social Security Administration's Program Operations Manual System ("POMS") that "'[u]nderstanding, carrying out, and remembering simple instructions' includes '[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)[;] [t]he ability to perform activities within a schedule ... [;] [t]he ability to sustain an ordinary routine without special supervision[;] ... [and] [t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods'") (citation omitted); *Wood v. Barnhart*, No. CIV.05-0432, 2006 WL 2583097, at *11 (D. Del. Sept. 7, 2006) ("In restricting plaintiff to jobs with simple instructions, the court concludes that the A.L.J. adequately accounted for the moderate limitation in maintaining concentration, persistence or pace which was identified by both state agency physicians in their psychological evaluations of plaintiff and supported by plaintiff's medical records."); 20 C.F.R. § 404.1568(a)

("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). Moreover, as previously discussed, the ALJ specifically considered that "[t]he record further describes significant non-compliance with psychogenic medications, but improvement in his mental health conditions when medications are restarted (Exhs. 10F and 17)." R. 23. Notably, those exhibits specifically cited by the ALJ reflect, *inter alia*, normal or intact cognitive functioning and intact concentration, attention, and memory. R. 545, 663, 667, 671, 675. Substantial evidence therefore unquestionably supports the ALJ's RFC determination in this regard.

Finally, Plaintiff apparently contends that the RFC is not supported by substantial evidence because the vocational expert testified that "if plaintiff were off-task 15% of the workday he would be unable to perform any job (Tr. 77)." *Plaintiff's Moving Brief*, ECF No. 26, p. 31. While it is true that the vocational expert so testified, *see* R. 77, the ALJ ultimately rejected this limitation when he concluded that Plaintiff was capable of performing light work with certain additional limitations. R. 20−21. As previously discussed, The ALJ need include only "credibly established" limitations in the RFC. *See Rutherford*, 399 F.3d at 554. Absent any credible evidence that Plaintiff would be off-task 15% of the workday, "'it would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)); *cf. Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (stating that a "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence")

(citation omitted); *Harris v. Comm'r of Soc. Sec.*, No. CV 17-3964, 2018 WL 5801546, at *3 (D.N.J. Nov. 5, 2018) ("While the vocational expert testified in response to a hypothetical posed by Plaintiff's counsel— that a person who is occasionally unable to respond appropriately to supervisors would indeed be unemployable—there is no evidence in the record to support Plaintiff's contention that there are times in the day that she would be wholly unable to interact with supervisors in an appropriate manner, or that Plaintiff would engage in frequent or occasional inappropriate conduct in dealing with them."). Accordingly, because the ALJ did not include this limitation in Plaintiff's RFC, the ALJ properly disregarded the vocational expert's testimony regarding being off-task 15% of the day.

For all these reasons, the Court concludes that the ALJ's RFC determination is consistent with the evidence and enjoys substantial support in the record.

## V.        CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 17, 2021                          *s/Norah McCann King*
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE